## Johnson Estate.

Argued March 16, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Harry L. Siegel,* with him *W. P. Geary,* and *Siegel and Siegel,* for appellant.

*J. Villard Frampton,* with him *H. Ray Pope, Jr., Frampton & Courtney,* and *Pope & Alexander,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, May 2, 1961:

Harriet I. Johnson, a resident of Clarion County, died, testate, on December 19, 1950. By her will she created a trust of her residuary estate with the First National Bank of New Bethlehem, Pa. [now First Seneca Bank and Trust Company] as trustee. Under the terms of the trust the net income is payable to Emma I. Jacoby [decedent's sister] during her lifetime; after her death, the net income is payable to Samuel O. Jacoby [decedent's brother] during his lifetime; upon the death of the survivor of both life beneficiaries, the trust will terminate. Upon the termination of the trust, the trustee is directed to pay over, inter alia, "Twenty-five per centum (25%) [of the residuary estate] . . . to the niece of my late husband, F. R. Johnson, Florence Billmyer, *if she shall be living at the time of the distribution of my residuary estate".* (Emphasis supplied) In the event that Florence Billmyer died prior to that event her share was to be paid to Bucknell University.

Samuel O. Jacoby [a life beneficiary] died April 28, 1955 and Florence Billmyer, [the possible remainderman] died on August 8, 1957. Emma I. Jacoby [the other life beneficiary] is still living.

On November 25, 1958, Florence Billmyer's personal representative [Billmyer Estate] petitioned for a declaratory judgment in the Orphans' Court of Clarion County. This proceeding sought the construction and interpretation of the eleventh paragraph of decedent's will and a declaration that Florence Billmyer at the time of her death was vested with a twenty-five percent interest in the trust principal, sub-

ject to the rights in such trust of Emma I. Jacoby, the surviving life beneficiary. The First Seneca Bank and Trust Company, successor trustee, filed an answer to the merits and Bucknell University filed preliminary objections which averred that the court lacked jurisdiction to enter a declaratory judgment because of the availability of another remedy, i.e., audit of the trustee's account and distribution in the Orphans' Court. The court sustained the preliminary objections and dismissed the declaratory judgment petition. From that ruling, this appeal has been taken.

Bucknell contends that the question whether Florence Billmyer's interest, under this will, was *vested*, subject to the life beneficiary's interest, or was *contingent* upon Florence Billmyer's survival of the surviving life tenant can *only* be resolved at the time of the audit of the trustee's account, which account will be filed upon the termination of the trust [i.e., the death of the surviving life beneficiary] and, therefore, declaratory judgment will not lie. Conceding that such question *could* be resolved at the time of audit, nevertheless, the Billmyer Estate contends that declaratory judgment will lie regardless of the availability of this other remedy, a remedy which cannot be pursued until an uncertain time in the future, i.e., when the surviving life tenant dies.[1]

The present issue is narrow: does the availability of this other remedy bar a declaratory judgment proceeding to construe and interpret this will? In determining this issue, we assume, with the parties and the court below, that the availability of this other remedy

---

[1] The Billmyer Estate points out that the decedent's executor filed his final account on July 13, 1951 and made distribution of the residuary estate to the trustee. Billmyer Estate, therefore, contends that such action constituted the "distribution of the residuary estate" contemplated under the terms of the decedent's will as the event which Florence Billmyer had to survive.

constitutes the *only* bar to the entertainment of jurisdiction of this proceeding and that all other jurisdictional requirements, i.e., presence of an "actual controversy", the joinder of all necessary parties, etc., for a declaratory judgment are present.

On June 18, 1923, the legislature adopted the provisions of the Uniform Declaratory Judgments Act, a "remedial" statute whose stated purpose was "to settle and to afford relief from uncertainty, and insecurity with respect to rights, status, and other legal relations" and a statute was mandated by the legislature "to be liberally construed and administered".[2]

Section 6 of the Pennsylvania Declaratory Judgments Act[3] as originally enacted—identical with the corresponding section of the Uniform Act—provided "The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."

Until 1935 the interpretation and construction of section 6 by our Court was at variance with the interpretation and construction placed thereon by many other jurisdictions in the United States. The tenor and effect of many of our decisions was that, if there existed another available remedy, a declaratory judgment proceeding would not lie.[4] However, during this

---

[2] Act of June 18, 1923, P.L. 840, §12, 12 PS §842.

[3] Act of 1923, supra, §6.

[4] In one of the first cases arising under the Act, *List's Estate*, 283 Pa. 255, 129 A. 64, this Court (although, strangely enough, it passed upon the merits of the controversy) refused to entertain a declaratory judgment to construe a will because at the time there was pending in the Orphans' Court an audit of an account at which audit the will could be construed. In the landmark decision in this area of the law, *Kariher's Petition (No. 1)*, 284 Pa. 455, 471, 131 A. 265, Chief Justice von Moschzisker, passing upon constitutionality of the Act, stated that a declaratory judgment would not be entertained "where another *statutory* remedy has been specially

same period of time, the court did entertain declaratory
judgment in cases involving the interpretation of wills

provided for the character of case in hand." (Emphasis supplied)
This statement in *Kariher* was in line with the position taken in
other jurisdictions. Since there was already pending in the Orphans'
Court a proceeding which would achieve the same purpose as sought
in a declaratory judgment, the Court in *Dempsey's Estate*, 288 Pa.
458, 460, 137 A. 170 dismissed a proceeding for declaratory judg-
ment at the same time stating that the relief sought by declaratory
judgment "could have been obtained as speedily and effectively in
the proceeding to compel an account." In *Brown's Estate*, 289 Pa.
101, 137 A. 132, although there was an alternative remedy, we
entertained a declaratory judgment to determine whether a residu-
ary clause in a will violated the rule against perpetuities and
determined the rights of the parties. In *Leafgreen v. La Bar*,
293 Pa. 263, 264, 142 A. 224, the Court dismissed a declaratory
judgment on the ground that another "equally serviceable remedy"
was at hand. [It will be noted that the "statutory remedy" in
*Kariher* is now broadened to "equally serviceable remedy".] In
*Ladner v. Siegel*, 294 Pa. 368, 373, 144 A. 274, it was stated that
a declaratory judgment would not lie "if another legal remedy
is equally available." In *Taylor v. Haverford Township*, 299 Pa.
402, 149 A. 639, the Court returned to its position in *Kariher* and
stated that declaratory judgment would not lie where another
*statutory* remedy was available. In *Sterrett's Estate*, 300 Pa. 116,
150 A. 159, the Court refused to determine by way of declaratory
judgment whether either one of two wills constituted an effective
exercise of a power of appointment on the ground, inter alia, that
"another established remedy" was available. In *Cryan's Estate*,
301 Pa. 386, 152 A. 675, we entertained declaratory judgment to
construe a will but stated that declaratory judgment would not
lie "where another remedy [is] available." In *Orndoff v. Con-
sumers Fuel Co.*, 308 Pa. 165, 162 A. 431, we entertained declara-
tory judgment, even though the questions could have been decided
in an equity action, upon the ground that equity was not "a more
appropriate remedy". In *Nesbitt v. Manufacturers' Casualty In-
surance Co.*, 310 Pa. 374, 380, 165 A. 403, we said that declaratory
judgment could not be entertained where the question "can be
litigated in the established course of legal and equitable procedure."
In *Bell Telephone Company of Pennsylvania v. Lewis*, 313 Pa. 374,
169 A. 571, we refused declaratory judgment because another "ade-
quate remedy was available."

even though another remedy was available.[5] It is further noted that the Court during this period entertained a great many non-will cases by way of declaratory judgment where there was another remedy available to the parties.[6]

While a review of the decisions of this Court during that period does indicate some inconsistencies, it, nevertheless, was the position of our Court that, present another available remedy, declaratory judgment would not lie. By virtue of that position declaratory judgment became an exceptional or extraordinary, not an alternative, remedy.

In order to bring Pennsylvania in line with other jurisdictions in the interpretation of section 6, in 1935 an amendment to section 6 was drafted, presumably by ex-Chief Justice VON MOSCHZISKER after his retirement from the bench.[7] Such amendment provided: "Section 6. Discretionary. Relief by declaratory judgment or decree may be granted in all civil cases where an actual controversy exists between contending parties or where the court is satisfied that antagonistic claims are present between the parties involved which indicate im-

[5] *List's Estate,* supra; *B'Nai B'Rith Orphanage v. Roberts,* 284 Pa. 26, 130 A. 298; *Kariher's Petition (No. 1),* supra; *Dommell's Estate,* 286 Pa. 509, 134 A. 379; *Brown's Estate,* supra; *Smith's Petition,* 291 Pa. 129, 139 A. 832; *Kidd's Estate,* 293 Pa. 21, 141 A. 644. Cf.: *Lyman v. Lyman,* 293 Pa. 490, 143 A. 200, and *Sterrett's Estate,* supra, where the court refused declaratory judgment for the construction of a will.

[6] *Reap v. Wyoming Valley Trust Co.,* 300 Pa. 156, 150 A. 465; *Sloan v. Longcope,* 288 Pa. 196, 135 A. 717; *Klauder v. Cox,* 295 Pa. 323, 145 A. 290; *Malley v. American Indemnity Co.,* 297 Pa. 216, 146 A. 571; *Cupp Grocery Co. v. Johnstown,* 288 Pa. 43, 135 A. 610; *Devlin's Trust Estate,* 284 Pa. 11, 130 A. 238; *Smith's Petition,* supra; *B'Nai B'Rith Orphanage v. Roberts,* supra; *Dommell's Estate,* supra; *Brown's Estate,* supra.

[7] Borchard, Declaratory Judgments (2nd ed.) p. 321.

minent and inevitable litigation, or where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which he has a concrete interest and that there is a challenge or denial of such asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding. Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed; but the mere fact that an actual or threatened controversy is susceptible of relief through a general common law remedy, or an equitable remedy, or an extraordinary legal remedy, whether such remedy is recognized or regulated by statute or not, shall not debar a party from the privilege of obtaining a declaratory judgment or decree in any case where the other essentials to such relief are present; . . ."

This proposed amendment clearly provided that the only other remedy which would bar declaratory judgment was a "special form of remedy for a specific type of case" and the fact that another remedy was available would not constitute a bar to declaratory judgment. When that amendment was adopted by the legislature, it was further amended in the following manner: ". . . but the case is not ripe for relief by way of such common law remedy, or extraordinary legal remedy, or where the party asserting the claim, relation, status, right, or privilege and who might bring action thereon, refrains from pursuing any of the last mentioned remedies. Nothing herein provided is intended to or shall limit or restrict the general powers or jurisdiction conferred by the act hereby amended; but proceeding by declaratory judgment shall not be permitted in any case where a divorce or annulment of

marriage is sought." The legislature in the Act of April 25, 1935, P.L. 72, §1[8] adopted the language of both the so-called VON MOSCHZISKER amendment and the language of the amendment to that amendment.

Approximately eleven months after the passage of the 1935 statute, this Court in *Allegheny County v. Equitable Gas Co.*, 321 Pa. 127, 183 A. 916, speaking through Mr. Justice LINN, stated [p. 129] "that . . . [section 6 of the 1935 statute] provides that a declaration may be made, notwithstanding the existence of a common law remedy, when it appears that 'the case is not ripe for relief by way of such common law remedy . . .'; in other words, if the case is *'ripe' for relief by the common law remedy, that remedy shall be preferred.*" (Emphasis supplied) For practical purposes, the construction of section 6 by that decision equated the construction of section 6 prior to its amendment in 1935 and restored declaratory judgment to its status as an extraordinary rather than alternative remedy.[9] In *Moore v. Moore*, 344 Pa. 324, 25 A. 2d 130, we recognized [p. 327] that the "1935 amendment to the Act widens its scope" and [p. 328] that "[t]he fact that the controversy is susceptible of relief through some other remedy, does not debar declaratory judgment relief where, . . ., the case is not ripe for relief by way of such other remedy."[10]

Finally, in *Stofflet & Tillotson v. Chester Housing Authority*, 346 Pa. 574, 31 A. 2d 274, the Court, speaking through Mr. Justice PARKER, noted [p. 577] that

---

[8] 12 PS §836.

[9] In *Erie City v. Phillips*, 323 Pa. 557, 187 A. 203, and *Bergman v. Gross*, 329 Pa. 67, 196 A. 488, we reiterated that declaratory judgment would not lie where a statutory remedy has been provided for.

[10] *Grambo v. South Side Bank & Trust Co.*, 141 Pa. Superior Ct. 176, 14 A. 2d 925; *Day v. Ostergard*, 146 Pa. Superior Ct. 27, 21 A. 2d 586.

". . . [declaratory judgment] is not an optional substitute for established and available remedies" and that: " 'The Uniform Declaratory Judgments Act . . . was not intended for, and should not be invoked in cases where the judgment sought can be had as expeditiously in the ordinary course of legal procedure as it can under the statute' " which was the pre-1935 statute position of the Court as set forth in *Nesbitt v. Mfrs. Casualty Ins. Co.,* 310 Pa. 374, 380, 165 A. 403. In *Valley Railroad Co. v. Delaware, Lackawanna & Western Railroad Co.,* 346 Pa. 579, 31 A. 2d 276, the Court refused declaratory judgment because there was a remedy available in assumpsit.[11]

As a result of these decisions, the construction of section 6, as amended, reached the same result as the construction of section 6 prior to its amendment, i.e., declaratory judgment would not lie if another remedy was available.

On May 26, 1943[12] the legislature again amended section 6 by removing from the 1935 Act that portion of its language which had been added to the VON MOSCHZISKER amendment. The 1943 amendment is exactly the same as the VON MOSCHZISKER proposed amendment of 1935.

An examination of the legislative history of the 1923, 1935 and 1943 statutes, considered in the light of the decisions of this Court interpretive of the 1923 and 1935 statutes, clearly reveals the intent of the legislature that declaratory judgments be considered an alternative, rather than an extraordinary, remedy and that the existence of another remedy, in law or in

---

[11] See also: *Gerety Estate,* 349 Pa. 417, 37 A. 2d 792; *Keefer Estate,* 351 Pa. 343, 41 A. 2d 666; *Fahey Estate,* 356 Pa. 535, 52 A. 2d 580.

[12] Act of May 26, 1943, P.L. 645, §1, 12 PS §836.

equity, will not per se bar declaratory judgment. Since passage of the 1943 statute our Court has consistently taken this position.[13]

In *Philadelphia Manufacturers Mutual Fire Insurance Company v. Rose,* 364 Pa. 15, 70 A. 2d 316, there was a proceeding under the Uniform Declaratory Judgments Act to ascertain the coverage or non-coverage of a fire insurance policy which had been dismissed in the court below upon the ground that the parties had an adequate remedy in an action of assumpsit for the adjudication of their rights. In reversing the court below, Mr. Justice LINN stated that the court below gave inadequate effect to the 1943 statute (pp. 22, 23) : "The legislature, by the amendment of 1943, clearly provided that neither the fact that the defendant might have pursued his 'general common law remedy' by suing in assumpsit, nor the fact that plaintiff might have used an 'equitable remedy' to reform the policy (nor both facts together) shall, in the words of the amendment, 'debar a party . . . from the privilege of obtaining a declaratory judgment or decree in any case where the other essentials to such relief are present.'

"The cases . . . cited by the court in banc need not detain us in considering the amendment of 1943, which imposes a different or more restricted measure of discretion than was imposed originally: Kariher's Petition, 284 Pa. 455, 131 A. 265 (1925) and Capital Bank and Trust Co.'s Petition, 336 Pa. 108, 6 A. 2d 790 1939), arose and were decided before that amendment.

---

[13] In *Wirkman v. Wirkman Co.,* 392 Pa. 63, 66, 139 A. 2d 658, it was said: "A declaratory judgment should not be granted where a more appropriate remedy is available." However, this statement should be read in connection with the decisional point in *Wirkman* which was that the parties had contractually bound themselves to pursue arbitration to the exclusion of prior judicial relief and not that arbitration was another available remedy.

In Schoenbrun v. Nettrour, 360 Pa. 474, 61 A. 2d 868 (1948), which was brought after 1943, the petition was dismissed because the elements of a justiciable controversy under the act were not even alleged.

"With respect to the cases referred to on the second proposition, that assumpsit or bill to reform the policy constitute other available remedies, it is sufficient to say that the cases cited, Nesbitt v. Mfrs. Casualty Ins. Co., 310 Pa. 374, 165 A. 403 (1933); Stofflet & Tillotson v. Chester Housing Authority, 346 Pa. 574, 31 A. 2d 274 (1943); Valley Railroad Co. v. Delaware, Lackawanna & Western R. Co., 346 Pa. 579, 31 A. 2d 276 (1943); Allegheny County v. Equitable Gas Co., 321 Pa. 127, 183 A. 916 (1936), arose before the amendment of 1943. In Gerety Estate, 349 Pa. 417, 419, 37 A. 2d 792 (1944), we applied the provision 'Where, however, a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed.' Obviously neither the 'general common law remedy' of assumpsit, nor the 'equitable remedy' by bill to reform, is within the class 'where . . . a statute provides a special form of remedy for a specific type of case.' The decision in Gerety Estate does not support the order appealed from, quite the contrary.

"The purpose of the original draftsman of the amendment of 1935 failed by additions made to his draft during its consideration by the legislature. The amendment of 1943 was obviously an effort to accomplish what had failed in 1935. We must give the amendment its clearly expressed effect where, as here, the parties have brought themselves within its terms."

In *Burke v. Pittsburgh Limestone Corp.*, 375 Pa. 390, 391, 392, 100 A. 2d 595, Mr. Justice ARNOLD stated: "We have decided to accept such proceedings [declaratory judgment proceedings] even though under the facts a common law action could have been brought."

See also: *Eureka Casualty Co. v. Henderson,* 371 Pa. 587, 92 A. 2d 551; *Lifter Estate,* 377 Pa. 227, 103 A. 2d 670; *Guerra v. Galatic,* 185 Pa. Superior Ct. 385, 137 A. 2d 866; *Stoutenburgh v. Upper Moreland-Hatboro Joint Sewer Authority,* 191 Pa. Superior Ct. 596, 159 A. 2d 250.

If "a statute provides a special form of remedy for a specific type of case" the existence of such remedy will bar declaratory judgment (*Castle Shannon Coal Corporation v. Upper St. Clair Twp.,* 370 Pa. 211, 212, 88 A. 2d 56). The existence of any other form of remedy will not per se bar declaratory judgment. Such is the mandate of the legislature.

Whether a court will take jurisdiction of a petition for declaratory judgment is a matter of judicial discretion (*Lifter Estate,* supra; *Eureka Casualty Co. v. Henderson,* supra) and the legislative mandate that the existence of another available remedy shall not bar declaratory judgment simply withdraws from consideration by the court the existence of such remedy as a determining factor in the exercise of the court's discretion. The question still arises for the court whether, under the facts and circumstances, judicial discretion would be wisely exercised if declaratory judgment were granted. As former Chief Justice STERN well stated in *Eureka Casualty Company v. Henderson,* supra, p. 592: "One of the chief objectives which declaratory judgment procedure was aimed to accomplish was the furnishing of an expeditious remedy for the settlement of claims, which, in the words of the statute, 'indicate imminent and inevitable litigation'—to settle controversies which, for some reason or other, could be determined more advantageously if settled promptly rather than at some future time when they would require adjudication."

However, a declaratory judgment must not be employed for the determination of rights in anticipation

of an event or events which may never occur,[14] or for the consideration of moot cases or as a medium for the rendition of advisory opinions (*Kariher's Petition (No. 1)*, 284 Pa. 455, 131 A. 265). In the exercise of its judicial discretion whether to grant or refuse declaratory judgment, a court may well heed the language of this Court in *Kariher's Petition (No. 1)*, supra, pp. 471, 472: ". . . that a proceeding to obtain such a judgment will not be entertained where the court lacks jurisdiction of the subject-matter involved [citing case] or where another statutory remedy has been specially provided for the character of case in hand [citing cases]; and that jurisdiction will never be assumed unless the tribunal appealed to is satisfied that an actual controversy, or the ripening seeds of one, exists between parties, all of whom are sui juris and before the court, and that the declaration sought will be a practical help in ending the controversy: [citing cases]. Moreover, in a declaratory judgment proceeding the court will not decide future rights in anticipation of an event which may not happen, but, just as in the ordinary executory action, it will wait until the event actually takes place, unless special circumstances appear which warrant an immediate decision, as, for instance, where present rights depend on the declaration sought by plaintiff; and even then such rights will not be determined unless all parties concerned in their adjudication are present and ready to proceed with the case (see section 11, of the act) so that the judgment rendered will make the issues involved res judicata in the full sense of that term."

In the instant situation, what Billmyer Estate seeks is a construction of a paragraph of decedent's will.

---

[14] *Kahn v. William Goldman Theatres, Inc.*, 341 Pa. 32, 17 A. 2d 340; *Congregational Conference Appeal*, 352 Pa. 470, 43 A. 2d 1; *Schoenbrun v. Nettrour*, 360 Pa. 474, 61 A. 2d 868; *Malick's Petition*, 133 Pa. Superior Ct. 53, 1 A. 2d 550.

Under section 4 of the Act of 1923, supra,[15] it is provided: "Any person interested, as or through an executor, administrator, trustee, guardian, or other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust, in the administration of a trust, or of the estate of a decedent, an infant, lunatic, or insolvent, may have a declaration of rights or legal relations in respect thereto—(a) To ascertain any class of creditors, devisees, legatees, heirs, next of kin, or others; or (b) To direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity; or (c) To determine any question arising in the administration of the estate of trust, including questions of construction of wills and other writings."

In *Cryan's Estate,* supra, p. 397, it was said: "Such a remedy [by way of declaratory judgment] is peculiarly appropriate to the orphans' court, vested as it is with supervisory powers over the administration of decedents' estates, . . ." Section 4 of the Act is meaningless unless, in appropriate situations, courts take upon themselves the construction of wills.

In the instant situation there is an actual controversy as to the right of Billmyer Estate to share in decedent's estate; the determination of such right does not depend upon the happening of any event or events which may not occur; all parties in interest are sui juris and before the court; to postpone construction of this will to an uncertain time in the future when an audit of the trustee's account can be held would benefit no one and could harm the Billmyer Estate. In their present posture the instant circumstances present a situation where declaratory judgment offers the only reasonable and practical solution to settle the contro-

---

[15] 12 PS §834.

versy between the parties and to render justice *now* rather than at some uncertain time in the future.

Order reversed.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

Testatrix, Harriet I. Johnson, died on December 19, 1950. She left a will in which she bequeathed 25% of the corpus of her residuary trust estate to Florence E. Billmyer, payable to her upon the death of the last survivor of Emma J. Jacoby and Samuel O. Jacoby, life beneficiaries of the trust, if Florence was then living. Samuel O. Jacoby, one of the life tenants, died in 1955; Emma J. Jacoby, the other life tenant, is still living; Florence E. Billmyer, the contingent remainderman, died in 1957.

Florence Billmyer's executor filed a petition in the Orphans' Court of Clarion County—not the usual petition for a citation (or rule) for an account, but—for a declaratory judgment under §4 of the Uniform Declaratory Judgments Act of June 18, 1923,* as amended April 25, 1935** and May 26, 1943*** Petitioner averred "by reason of the provisions of the [Harriet I. Johnson's] Will a one-fourth interest in the trust estate *vested* in his decedent on *July 13, 1951,* when distribution of the residuary estate was made [by the executor to Miss Johnson's testamentary trustees], she [Florence Billmyer] then being living, subject to the rights of Emma J. Jacoby the surviving life beneficiary in said trust.

"That your Petitioner is advised that Bucknell University, Lewisburg, Pennsylvania, whose Trustees are designated as contingent beneficiaries in the aforemen-

---

* P.L. 840, 12 PS §834.
** P.L. 72, §1.
*** P.L. 645, §1, 12 PS §836.

tioned paragraph Eleventh (c) of the Will of Harriet I. Johnson, *contend that the interest* of Petitioner's decedent in the trust passed to it by reason of her death on August 7, 1957.

"That by reason of such contention on the part of Bucknell University there is presently antagonistic claims indicating imminent and inevitable litigation and that the Declaratory Judgment herein prayed for will be of practical help in any such controversy between your Petitioner and Bucknell University."

The trustees of Bucknell University filed preliminary objections to the petition.

From the Order of the Orphans' Court sustaining the preliminary objections, the executor of Florence Billmyer's will has appealed.

The Will of Harriet I. Johnson pertinently provides: "ELEVENTH: . . . (c) Upon the death of the last survivor of my sister, Emma J. Jacoby, and my brother, Samuel O. Jacoby, *this trust shall terminate** and end and all assets of every nature and kind both real, personal and mixed, *shall be converted into cash* within one year, or as soon thereafter as can reasonably be done, *and the net proceeds,* after deduction of the trustee's commission, paid over to the following persons in the following amounts: . . .

"Twenty-five per centum (25%) thereof to the niece of my late husband, F. R. Johnson, Florence Billmyer, *if she shall be living at the time of the distribution of my residuary estate.*"

The will further provides that in the event Florence Billmyer should not be living at the time of distribution of testatrix's residuary estate, Florence's share should be paid to the trustees of Bucknell University.

Preliminary objections admit as true all facts which are clearly and well pleaded but not the pleader's con-

---

* Italics throughout, ours.

clusions or his averments of law: *Robinson v. Philadelphia,* 400 Pa. 80, 161 A. 2d 1; *Fawcett v. Monongahela Railway Co.,* 391 Pa. 134, 137 A. 2d 768; *Gardner v. Allegheny County,* 382 Pa. 88, 114 A. 2d 491; *Narehood v. Pearson,* 374 Pa. 299, 96 A. 2d 895; cf. also: *Ross v. Metropolitan Life Insurance Co.,* 403 Pa. 135, 169 A. 2d 74.

In *Keystone Insurance Company v. Warehousing & Equipment Corporation,* 402 Pa. 318, 165 A. 2d 608, the law with respect to declaratory judgment proceedings was clearly reiterated (pages 320-321): "Notwithstanding the broad language of the Declaratory Judgments Act, they are not, and practical experience and realities have demonstrated that they should not be a matter of right, but a matter initially for the sound discretion of the lower Court. In the leading case of Eureka Casualty Company v. Henderson, 371 Pa. 587, 92 A. 2d 551, this Court, speaking through Chief Justice STERN, said (pages 591-592): 'We start with the fundamental proposition that whether or not a court will take jurisdiction of a petition for a declaratory judgment or decree is *purely a matter of judicial discretion.* . . . This discretionary character of the judicial process in such actions has been consistently proclaimed by this court ever since declaratory judgments first came into being: Kariher's Petition (No. 1), 284 Pa. 455, 471, 131 A. 265, 271; Carwithen's Estate, 327 Pa. 490, 494, 194 A. 743, 745; Capital Bank and Trust Company's Petition, 336 Pa. 108, 111, 6 A. 2d 790, 792; Kahn v. William Goldman Theatres, Inc., 341 Pa. 32, 35, 17 A. 2d 340, 341; Schoenbrun v. Nettrour, 360 Pa. 474, 477, 61 A. 2d 868, 869."

The law was once again reiterated in *Lifter Estate,* 377 Pa. 227, 103 A. 2d 670. In *Lifter Estate* we allowed a declaratory judgment proceeding because the will contained conflicting provisions and a residuary gift to the Federation of Jewish Charities was extremely

doubtful because of the provisions and limitations with respect to the gift. Testator gave the income from his residuary estate to his wife for her life with a discretionary power in the trustees to expend principal in her behalf. His wife survived him. The will then provided that upon the death of his wife the trust should terminate and the principal should be paid over and distributed to 17 persons or charities and the residuary estate to the Federation of Jewish Charities to erect a building, provided (a) such erection began within five years from the date of his death, and (b) that the Federation notify testator's trustees of its acceptance of the bequest and (c) that the conditions attached thereto are met within 60 days from the date of testator's death. There was a gift over if for any reason the Federation did not accept or meet all the conditions. The conflicting, confusing and litigation-producing provisions of the *Lifter will* made a declaratory judgment not only appropriate but vitally necessary.

The Court, after quoting the law as set forth in *Eureka Casualty Co. v. Henderson,* supra, and *Capital Bank and Trust Company's Petition,* supra, said (page 229) : "The facts in the instant case bring it within the aforesaid requirements; the problems involved are so unusual and difficult, litigation was so imminent and inevitable, and the peril to the Federation was so great and immediate that we consider this to be an appropriate matter for a declaratory judgment."

The *Lifter* decision in principle rules the present case, but factually the two cases are very different. Miss Johnson's will demonstrates, contrary to the petitioner's averred conclusions, (1) that there is no imminent litigation, (2) that the problems are neither involved nor difficult, (3) that there is an adequate remedy for petitioner by use of customary Orphans' Court procedures, (4) that there is no immediate peril or indeed peril of any kind to petitioner and (5) that there

are no exceptional circumstances which justify this proceeding.

In *Wirkman v. Wirkman Company,* 392 Pa. 63, 139 A. 2d 658, we affirmed the action of the lower Court which had sustained preliminary objections to a petition for a declaratory judgment, thus denying the availability of the remedy. The petition for a declaratory judgment sought a declaration of petitioner's rights under a contract with defendants; one of its terms provided for an arbitration under certain circumstances. An interpretation of this contract and the arbitration provision was what the petitioner sought. The Court said (page 66) : "A declaratory judgment should not be granted where a more appropriate remedy is available. See Stofflet & Tillotson v. Chester Housing Authority, 346 Pa. 574, 31 A. 2d 274 (1943) ; Borchard, Declaratory Judgments 302 (2nd ed. 1941)."

When a Court has recently cleared up the confusion or uncertainty arising from prior decisions and has established a clear principle or standard, it seems to me most unfortunate to ignore or change these recent decisions and once again reopen the question and unsettle or change the existing law. This is exactly what the majority opinion has done.

The pertinent authorities furnish additional reasons for the affirmation of the Order of the lower Court. It is clear as crystal that petitioner's testator had only a contingent interest under Miss Johnson's will and that that interest expired by the death of petitioner's testator. Furthermore, petitioner's claim— assuming she has any—can and should be properly raised at the audit of the testamentary trustee's account when an account is filed upon the death of the last life tenant. This would be the appropriate time and place to raise the question which petitioner seeks to have determined now and in this unusual proceeding.

In *Keefer Estate*, 351 Pa. 343, 41 A. 2d 666, Mr. Justice ALLEN M. STEARNE, speaking for a unanimous Court, said (pages 343-344) : "The question is whether a case for declaratory judgment is presented.

"The controversy concerns the construction of a will. Decedent was the executor of his wife's estate. Upon her decease he administered the estate and after filing an account made absolute distribution to himself. The husband died over three years after such distribution. Appellant, who claims under the wife's will, contends that under its terms decedent did not possess an absolute estate in the residue, but possessed only a life estate.

. . .

"In the present case the Orphans' Court of Cumberland County . . . was in error in construing the will and decreeing distribution under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, 12 PS section 831, et seq., as amended. We pointed out in Gerety Estate, 349 Pa. 417, 37 A. 2d 792, that 'the remedy under the Declaratory Judgments Acts is not an optional substitute for established and available remedies' or 'where another statutory remedy has been specifically provided'. The Orphans' Court Act of June 7, 1917, P. L. 363, 20 PS section 2082, et seq., and the Fiduciaries Act, supra, direct precisely how a decedent's estate shall be settled and distributed.

"The appropriate place to pass upon the matters now in controversy is at the audit of the account which has already been filed, where all parties in interest will receive statutory notice and be given the opportunity to be heard."

In *Straus's Estate*, 307 Pa. 454, 161 A. 547, this Court affirmed the dismissal by the Orphans' Court of a petition under the Uniform Declaratory Judgments Act "on the opinion of Judge GEST," who incidentally, was one of the greatest Orphans' Court

Judges in the history of Pennsylvania. Judge GEST pertinently said (pages 457-458-459) : "The question propounded in the petition is whether the late Frederick G. Nixon-Nirdlinger had vested one-third interest in each of the estates now held in trust for Laura and Alice for their lives, subject to be divested by the birth of issue to them, which issue should be living at the time of their respective deaths, or whether said one-third interest in the trust estates is contingent upon surviving said Laura and Alice, in which case his children would claim to be entitled if living at the deaths of Laura and Alice without their leaving issue.

"Now, it is obvious that this question should not ordinarily be determined by a declaratory judgment. When Laura and Alice or either of them die, the account of the trustees will come before this court, and the rights of the remaindermen will then [be] ascertained. The Declaratory Judgment Act can only be invoked where a real controversy exists: Lyman v. Lyman, 293 Pa. 490; Sterrett's Est., 300 Pa. 116, and Cryan's Est., 301 Pa. 386, and the court will not decide future rights in anticipation of the event at which such future rights call for decision: Ladner v. Siegel, 294 Pa. 368. What exceptional reasons are there for taking this case out of the general rule? The petition merely alleges '. . . the further fact that the proper ascertainment of such assets is necessary in the settlement of inheritance taxes with the Commonwealth of Pennsylvania and the United States Government, it is imperative to the interests of that estate that the question involved be determined. Many years may elapse before the present subsisting trusts terminate, and long before that period the right of the executors to appeal from any tax imposed on their interest in this estate, if any, would expire.' Doubtless it would be more convenient for the executors to have us construe the will in advance, but this is by no means an adequate rea-

son. The allegation that it is necessary in order that the estate may be properly appraised for taxation, affords no sufficient reason for our action. Under the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, the tax on the interest of Frederick G. Nixon-Nirdlinger in the estate of Emanuel Straus, whatever it may be, will not be assessed until such interest vests in possession after the termination of the life estate. If the taxing authorities assess it now, the remedy is by appeal, and the taxing authorities of the Commonwealth and of the federal government are not before us asking for any decision on the question in futuro. If we allowed a declaratory judgment in this case, we might be asked in other cases to adjudicate the rights of the remaindermen in order that they might borrow of money lenders on their future interests, which it would not be pleasant to contemplate."

The aforesaid authorities clearly and unquestionably require the affirmation of the Order of the lower Court which dismissed the petition. Moreover, and in any event it is clear that there was no palpable abuse of judicial discretion by the Court below and consequently we must sustain that Court's Order dismissing the petition. Cases, supra.

There is still another reason, although none is necessary, why the petition for a declaratory judgment should be dismissed. To allow it in this case where it is clear that petitioner has an established and adequate remedy and there is no peril to petitioner's claim nor any exceptional circumstances, would open wide the door to a myriad of declaratory judgment proceedings which would swamp our already greatly overburdened Courts.

I would affirm the Order of the Orphans' Court.